IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| AARON ROSS | * | |
| --- | --- | --- |
| | * | |
| v. | * | Civil No. JFM-09-3255 |
| | * | |
| WAYNE EARLY, *et al.* | * | |

******

MEMORANDUM

This case arises from Plaintiff's arrest, on two occasions, for engaging in demonstrations opposing the circus on the sidewalk outside of the First Mariner Arena ("the Arena"). Plaintiff has challenged a protocol, created by members of the Baltimore Police Department and City Solicitor's office, which required demonstrators to remain within a designated area around the Arena, as violative of the First Amendment on its face and as applied. On December 8, 2010, I issued an Opinion denying Defendants' motion for summary judgment. Defendants now move for reconsideration of this decision and for qualified immunity as to Defendants sued in their individual capacities. The Motion for Reconsideration will be denied, but the Motion for Qualified Immunity will be granted except as to Defendant Wayne Early ("Officer Early").

I.

I described the factual background of this action in detail in my December 8th Opinion, so I will provide only a brief recitation of the relevant facts here. After a 2003 incident in which a truck used by animal-welfare protesters caused a vehicular traffic problem endangering drivers and pedestrians, a member of the City Solicitor's office, at the request of BPD officers, drafted a protocol restricting demonstrators to certain areas of the sidewalk surrounding the Arena. Although there was no subsequent request to use a truck during the demonstrations and the

1

protocol did not address vehicles, the protocol was disseminated by the City Solicitor's Office and implemented during all circus performances at the Arena in subsequent years. I concluded in my prior Opinion that there was a genuine issue of material fact as to whether the protocol was generally applicable—applying equally to all persons engaged in demonstrations during the relevant times—or was applicable only to circus or animal-welfare demonstrators. Defendants have presented no new evidence that would lead me to depart from this conclusion.[1]

Defendants sought summary judgment on the ground that the protocol constituted a reasonable time, place, and manner restriction, and therefore was not facially unconstitutional. Although I found that the protocol was content-neutral, served a significant government interest, and provided sufficient alternative avenues of communication, I declined to grant summary judgment because I could not determine whether the protocol was narrowly tailored. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746 (1989) (listing the requirements for a reasonable time, place, and manner restriction). In my December 8th Opinion, I distinguished between two standards for narrow tailoring: an intermediate standard for generally applicable ordinances and regulations, *see id.* at 797–800, and a heightened standard that the Supreme Court articulated for injunctions, *see Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765, 114 S. Ct. 2516 (1994). Considering Third and Second Circuit cases that applied the heightened standard to restrictions on speech other than injunctions where those restrictions possessed characteristics, similar to those of injunctions, that caused them to pose greater-than-normal risks of censorship, I then held that, if the protocol is found not to be generally applicable, I should apply the heightened standard in deciding whether the protocol is narrowly tailored. Under this

---

[1] Defendants contend that I must decide as a matter of law whether the protocol was generally applicable. Whether a time, place, or manner restriction is reasonable is a question of law to be decided by the court, but this may require that a factfinder first decide relevant questions of fact. The scope of the protocol presents such a factual issue.

2

standard, I determined, the protocol is not narrowly tailored. If the protocol is generally applicable, the more lenient *Ward* standard applies, and the protocol is narrowly tailored.

II.

Defendants first seek reconsideration of my decision that, in the event the protocol is found not to be generally applicable, the heightened standard for tailoring should apply. I decline to do so. Although—as I acknowledged in my prior Opinion—the Fourth Circuit has not ruled that the heightened standard should be applied restrictions other than injunctions, the Third and Second Circuit decisions provide persuasive authority. Based on the reasoning in these cases, I believe that heightened scrutiny should apply where there is a content-neutral but not generally applicable restriction[2] that has not been promulgated through formal regulatory or legislative processes. *See McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009); *Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004). I reject Defendants' arguments that these cases are distinguishable on their facts. While the particular nature of the restrictions in those cases differed from the current protocol, I nonetheless find the reasoning supporting the extension of the heightened standard for tailoring beyond injunctions to be applicable.[3]

The cases cited by the Defendants do not convince me that the Fourth Circuit has rejected this approach. With respect to claims that a police directive violated the First Amendment,

---

[2] Defendants contend that the court cannot and should not inquire into the motives of law and policymakers because an illicit motive cannot render unconstitutional an otherwise constitutional law. I need not consider whether an inquiry into motive is appropriate, however, because whether or not members of the BPD or City Solicitor's office acted with animus does not affect the proper standard for tailoring. Nor is the disparate impact of the protocol relevant because, as I stated in the original opinion, a reasonable time, place, and manner restriction is not rendered facially unconstitutional because it disproportionately affects one ideological group. The proper inquiry is simply whether the protocol, as written, applied to all persons engaged in leafleting and other demonstration-related conduct or applied only to circus and animal-welfare demonstrators.

[3] Defendants argue that application of the heightened standard to the protocol would violate separation of powers principles because only the judiciary may issue injunctions, suggesting that by applying this standard I am authorizing executive officials to issue injunctions. My opinion, however, does not hold that the protocol is actually an injunction. Rather, I find that, to the extent a restriction on speech possesses characteristics *similar to* an injunction, the heightened standard articulated in *Madsen* should apply.

3

*Swagler v. Neighoff*, No. 09-1737, 2010 WL 4137530 (4th Cir. Oct. 18, 2010), merely held that the district court had not erred in declining to dismiss the plaintiffs' First Amendment claims because the pleadings, when read in the light most favorable to the plaintiffs, could be read to allege a content-based restriction on speech. *See id.* at *6–7. The opinion contained no discussion of the proper standard to apply for narrow tailoring. *See id.* In *Willis v. Town of Marshall*, 426 F.3d 251 (4th Cir. 2005), the Fourth Circuit did not engage in the analysis to determine if a time, place, or manner restriction was reasonable because the court determined that the conduct at issue—recreational dancing—was not protected by the First Amendment. *See id.* at 259–60. To the extent that Defendants cite this case for the proposition that an unwritten policy is not necessarily vague or unconstitutional, *see id.* at 261 n.3, I agree. Thus, as I expressed in my December 8th Opinion, the protocol, if found to be generally applicable, would be facially constitutional although it was conveyed to Plaintiff orally.

Defendants may seek appellate review of my decision, and the Fourth Circuit may ultimately reach a different conclusion than that I have reached here.[4] However, the cases cited by Defendants—as well as others I have reviewed—do not demonstrate that the extension of *Madsen*'s heightened standard beyond injunctions is improper under current Fourth Circuit precedent, and I have found the decisions of the Second and Third Circuits to be well reasoned.

III.

---

[4] Conceivably, the Fourth Circuit might rule that even if I erred in holding that a heightened scrutiny test should be applied in defining the constitutionality of the protocol in the event that the protocol is found to have been directed to circus demonstrators, it still might rule in favor of Plaintiff. I concluded in my prior Opinion that where, as here, only a particular group had caused problems in the past, a restriction affecting only this group may be content neutral because it would be justified on a basis other than the content of that group's speech. *See Ross v. Early*, 2010 WL 5094359, Civil No. JFM-09-3255, slip op. at 10 & n.7 (D. Md. Dec. 8, 2010). Injunctions that have been upheld as reasonable time, place, and manner restrictions present precisely this situation, and they provided support for my conclusion. However, it may be that injunctions are exceptional, and other restrictions that are not generally applicable must be held to be content based. Defendants have acknowledged that the protocol does not serve a compelling state interest, so if found to be content based, it would be facially unconstitutional. (*See* Joint Mot. Summ. J., Ex. 4 Mayor and City Council of Baltimore's Answers to Interrogatories, no. 1.)

Defendants also argue that the protocol burdens no more speech than necessary, satisfying the heightened standard for tailoring, and they urge me to reconsider my conclusion that the protocol is unconstitutional if this standard applies. Defendants are correct that injunctions may address imminent violations of the law, as well as problems that have occurred in the past. *See Madsen*, 512 U.S. at 765 n.3. Where there were past problems, however, an injunction may be "tailored . . . to afford more precise relief," so as "to ensure that the injunction [is] no broader than necessary to achieve its desired goals." *Id.* at 765. Here, I see no reason to disturb my conclusion that, in light of the fact that prior problems involving circus demonstrators were caused by the presence of a truck, the protocol cannot reasonably be found to burden no more speech than necessary because it affects only pedestrians and forces every circus demonstrator to remain in the prescribed area. Although limitations on the presence of demonstrators on sidewalks has been held to meet the "no broader than necessary" standard in other cases, those cases involved specific evidence of past problems caused by pedestrian demonstrators, such as violence, the disruption of medical services or severe impediments to pedestrian traffic. *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 362–64, 117 S. Ct. 855 (1997); *Madsen*, 512 U.S. at 758–59; *Frantz v. Gress*, 359 F. App'x 301, 302–04 (3d Cir. 2009) ("[The officer] testified that Frantz was standing in the middle of the sidewalk, causing pedestrians either to walk into the street or get 'shoved up against' the wall.). The evidence in this case cannot similarly justify the broad restriction on pedestrian demonstrations that was imposed.

IV.

Defendants assert that they are entitled to qualified immunity as to the claims against them in their individual capacities. I have already rejected Officer Early's motion for qualified

immunity, and Defendants present no argument as to why I should reconsider this determination. Accordingly, the Motion is denied as to Officer Early. I find, however, that the remaining defendants are entitled to immunity from suit in their individual capacities.

Qualified immunity shields government officials performing discretionary functions from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). This protects officials from liability where they act "reasonably but mistakenly." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987); *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986) ("[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). The defense applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815 (2009) (internal quotation marks and citations omitted). Hence, defendants are immune from suit in their individual capacities unless "it appears that (1) they violated a statutory or constitutional right of the plaintiff, and (2) the right was 'clearly established' at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right." *McVey v. Stacy,* 157 F.3d 271, 276 (4th Cir. 1998) (citations omitted).

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151 (2001), *abrogated on other grounds by Pearson*, 129 S. Ct. 808. This may be clear "based on controlling authority in the jurisdiction in question or on a 'consensus of cases of persuasive authority.'" *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Wilson v. Layne,*

526 U.S. 603, 617, 119 S. Ct. 1692 (1999)).  I have acknowledged that Fourth Circuit authority does not mandate the application of the heightened standard of tailoring in the present action. Additionally, the Second and Third Circuit cases I have found to be persuasive do not establish such a clear consensus that a reasonable person would have known that the protocol was unconstitutional.  Under these circumstances, it would not have been clear to a reasonable person promulgating the protocol that it was unlawful.  Defendants Nilson, DiPietro, Barclay, and Bealefeld therefore are entitled to qualified immunity.

For the foregoing reasons, Defendants' Motion for Reconsideration will be denied and their Motion for Qualified Immunity will be granted as to Defendants Nilson, DiPietro, Barclay, and Bealefeld.


February 25, 2011                             /s/
Date                                          J. Frederick Motz
                                              United States District Judge